DRESCHER LAW FIRM
Robert E. Drescher, Esq. State Bar No. 190886
24303 Walnut Street, Suite F
Newhall, California 91321
(661) 260-1149   FAX (661) 702-7985

Attorney for Plaintiff,
EDDIE VALENCIA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

Eddie Valencia,

               Plaintiff,

   v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION CORPORATION, a
federally chartered private corporation;
QUALITY LOAN SERVICE
COPRORATION, a California
Corporation; LSI TITLE COMPANY, a
Florida Corporation; JP MORGAN
CHASE BANK, N.A. A New York
Corporation;  DOES 1 through 10,
Inclusive,

              Defendants.

Case No. CV13-04307 - PA (JCGx)

**VERIFIED COMPLAINT FOR:**
1. DECLARATORY RELIEF [28
U.S.C. §§2201, 2202];
2. TEMPORARY RESTRAINING
ORDER, PRELIMINARY AND
PERMANENT INJUNCTIONS;
3. QUIET TITLE;
4. VIOLATION OF 12 U.S.C. §2605;
5. VIOLATION OF 15 U.S.C. §1692,
ET SEQ.;
6. VIOLATION OF CALIFORNIA
BUSINESS AND PROFESSIONS
CODE SECTION 17200, ET SEQ.;
7. CANCELLATION OF
INSTRUMENTS;
8. FRAUD IN THE
CONCEALMENT;
9. FRAUD IN THE INDUCEMENT;
10. ACCOUNTING;
11. WRONGFUL
FORECLOSURE;
12. INTENTIONAL INFLICTION
OF EMOTIONAL DISTRESS

**DEMAND FOR JURY
TRIAL**

VERIFIED COMPLAINT
PAGE 1

# COMPLAINT

COMES NOW Plaintiff, EDDIE VALENCIA ("Plaintiff or Mr. Valencia"), by and through his counsel, for his Complaint against Defendants, FEDERAL NATIONAL MORTGAGE ASSOCIATION CORPORATION, a federally chartered private corporation (in its capacity as purported assignee of Plaintiff's Deed of Trust)(hereinafter referred to as "Freddie Mac"); QUALITY LOAN SERVICE COPRORATION, a California Corporation (in its capacity as purported substituted mortgage servicer of Plaintiff's Note and Deed of Trust)(hereinafter "Quality"); LSI TITLE COMPANY, a Florida Corporation (in its capacity as purported agent for Quality)(hereinafter "LSI"); JP MORGAN CHASE BANK, N.A. A New York Corporation (in its capacity as purported beneficiary of Plaintiff's Note and Deed of Trust)(hereinafter "Chase"),(collectively "Defendants"), plead as follows:

## I.   STATEMENT OF THE CASE

1. Plaintiff alleges that Defendants are third-party strangers to his mortgage loan and have no ownership interest entitling them to collect payment or declare a default. By hiding behind the complexities of the mortgage finance system, Defendants brazenly attempt to dupe Plaintiff (and millions of other American homeowners) into believing that they have a right to collect on a debt in which Chase or Freddie Mac has no ownership interest. In an attempt to further their

fraudulent scheme and create the air of propriety surrounding their debt collection efforts, Defendant have resorted to "papering the file" by fabricating an "Assignment of Deed of Trust," employing individuals who have no authority or personal knowledge of the facts to which they attest, and falsely representing to Plaintiff and *to the Court* that they have the right to take Plaintiff's property away. Not only is Defendants' conduct a *criminal violation* of California's Mortgage Fraud Statute, Cal. Penal Code §532(f)(a)(4)[1], and an affront to long-standing property laws, but their reliance on fabricated and forged documents undermines the integrity of the judicial system. Through this action, Plaintiff seeks to stop Defendants' fraudulent practices, discover the true holder in due course of his Promissory Note ("Note"), and determine the status of Defendants' claims.

## II.  JURISDICTION, VENUE, AND PARTIES

2.  This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§1331, 1343, 2201, 2202, 12 U.S.C. §2605, 15 U.S.C. §1983 which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law. [2]

---

[1] Cal. Penal Code section §532(f)(a) provides that "a person commits mortgage fraud if, with the intent to defraud, the person does any of the following. . . (4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission."

[2] The Ninth Circuit instructs that in actions brought under 28 U.S.C. §2201, district courts must first determine whether there is actual controversy within its jurisdiction by analyzing the factors enumerated in *Brillhart v. Excess Ins. Co.*(1942) 316 U.S. 491 . The *Brillhart* factors require the Court to (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation. *Brillhart*, 316 U.S. at 495.; *see also Schafer v. Citimortgage* (C.D. Cal. June 15, 2011) CV-

VERIFIED COMPLAINT
PAGE 3

3.  This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. §1367.

4.  This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §1332 which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.00.

5.  The unlawful conduct, illegal practices, and acts complained of and alleged in this Complaint were all committed in the Central District of California and involved real property located in the Central District of California. Therefore, venue properly lies in this District, pursuant to 28 U.S.C. §1391(b).

6.  Plaintiff is now, and at all times mentioned herein, an individual residing in the County of Los Angeles, State of California. At all times relevant to this action, Plaintiff has owned real property commonly known as 10534 Amboy Avenue, Pacoima, further described as Assessor's Parcel Number 2618-016-012, with the following legal description:

> LOT 88 OF TRACT6690, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 77 PAGES 81 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, STATE OF CALAFORNIA

11-03919, 2011 WL 2437267. As held by the court in *Schafer*, this action does not involve needless determination of state law issues, does not involve forum shopping, and is not duplicative litigation.

7. At all relevant times, defendant, FEDERAL HOME LOAN MORTGAGE ASSOCIATION CORPORATION ("Freddie") is a private, for-profit, federally charted corporation with its principle place of business in McLean Virginia, doing business in California as well as nationally, and is subject to the jurisdiction of this Court.

8. At all relevant times, defendant, QUALITY LOAN SERVICE CORPORATION ("Quality") is a private, for-profit California corporation, with its principle place of business in San Diego, California, doing business in California, and is subject to the jurisdiction of this Court.

9. At all relevant times, defendant, LSI TITLE COMPANY (LSI") is a private for-profit Florida corporation, with its principle place of business   located in Jacksonville, Florida, doing business in the California, and is subject to the jurisdiction of this Court.

10. At all relevant times, JP MORGAN CHASE BANK, N.A.("Chase"), is a National Association organized under the laws of the United States with its principal place of business in New York, is doing business in California, and is subject to the jurisdiction of this Court.

11. Plaintiff is ignorant of the true identity and capacity of Defendants designated as DOES 1-10, but will amend the Complaint when identities have been ascertained according to proof at the time of trial. However, Plaintiff alleges

VERIFIED COMPLAINT
PAGE 5

on information and belief, that each and every Doe Defendants is in some manner responsible for the acts and conduct of the other Defendants, and were, and are responsible for the injuries, damages, and harm, incurred by Plaintiff. Plaintiff further alleges on information and belief that each such designated Defendant acted, and acts, as he authorized agent, representative, and associate of the other Defendants in doing the things alleged herein.

12. Whenever reference is made in this Complaint to any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other Defendants.

13. Any allegation about acts of any corporate or other business Defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

14. At all relevant times, each Defendant committed the acts, caused or directed other to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the Defendants acted as the agent of the other Defendants, and all of the Defendants acted within the scope of their agency of acting as an agent of the other.

15.     At all relevant times, each Defendant knew or realized that the other

VERIFIED COMPLAINT
PAGE 6

Defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that the other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

### III.   INTRODUCTION

16.     During the Mortgage Boom Era of 2002 to 2007, Wall Street investors looked to feed their insatiable and reckless greed for profit by tapping directly into the American Dream, specifically home ownership. Mortgage lenders and investment bankers aggressively lured the American people into predatory loans with low "teaser" interest rates and into purchasing homes with severely inflated appraisals done specifically to justify the loan value and under the promise that the booming real estate market would continue to boom. Wall Street would then take these soon to be "toxic" loans and bundle them into "Mortgage Backed Securities" thorough a process known as "Securitization." There "securities" were then sold to investors in the form of certificates, whereby the investors became the "Certificateholders" of the securities that were to be fed by the toxic loans.

17. Knowing that the predatory loans would soon default and turn into toxic

assets, Wall Street placed their bets accordingly and brought exotic insurance products in the form of Credit Default Swaps[3]   Thus when the Mortgage Boom turned into a Mortgage Meltdown (which it did), they would stand to make even more profit when the mortgage insurance paid them out for their "losses."

18. However, in their rush to "securitize" the predatory loans, Wall Street failed to actually follow its own rules and regulations, creating the instant situation where the securities are not actually backed by any mortgages at all. Under the standard model, the promissory notes were *supposed* to be sold and transferred into a trust pool ("Securitized Trust") that holds the promissory notes as collateral on the securities bought by investors ("Certificateholders"). These "true sales" allow the original lenders to move the notes off their books, eliminating the need to maintain capital-adequacy reserves against default. The purpose of securitizing collateral debt obligations was to provide a large supply of

---

[3] In 1995, JP Morgan created the Credit Default Swap (CDS). Essentially, a CDS is a form of insurance intended to protect the buyer of the policy in case the borrower defaults on the loan. If the borrower defaults, the buyer of the CDS receives a large payout for the cash value of the defaulted loan. The main difference between a traditional insurance policy and a CDS is that anyone can purchase a CDS, even those who have no direct "insurable interest" in the lender. CDSs were instrumental during the housing bubble because once the banks ran out of creditworthy borrowers, they had to turn to uncreditworthy "subprime" borrowers. To avoid losses from default, the banks moved these risky mortgages off their books by bundling them into "securities" and sell them to investors. To induce investors to buy, these securities, the securities were then "insured" with credit default swaps. CDSs allowed investors to bet against the average American to default on their mortgage with little risk. CDS insurance was especially attractive to investors who had knowledge of the subprime mortgage industry, since they knew the likelihood of default on those loans was much higher. Notably, AIG Insurance Company ("AIG"), an insurance carrier who owned a considerable market share of these CDS policies, was unable to make good on these policies after the housing market plummeted resulting in AIG seeking a government bailout. *See* Justin Fox, *Why the Government Wouldn't Let AIG Fail?* . TIME Business (September 16, 2008). http://www.time.com.time.business/article/0,8599,1841699,00.html. Thus, in the end, it was the American taxpayer who was shouldered with the full burden of all of these CDS.

money to menders for originating loans. And to provide investment to bond holders – which was expected to be relatively safe.

19. The Securitized Trusts, if ever formed properly, are subject to and governed by (1) the Pooling and Servicing Agreement; (2) the Mortgage and Loan Agreement; (3) the 424B5 Prospectus; (4) the common law trust rules of Delaware or New York, depending on its origin, and (5) Internal Revenue Code section 860A through 860G, better known as the Real Estate Mortgage Investment Conduit (REMIC") rules.

20. An essential aspect of the mortgage securitization process is that the Trust must obtain and maintain good title to the mortgage loans comprising the pool for that certificate offering. This is necessary in order for the Trustee of the purportedly Securitized Trust to be legally entitled to enforce the mortgage loans in case of default. In addition to other required documentation to complete the Collateral File of any given loan, two documents relating to each mortgage loan must be **validly transferred** to the Trust as part of the securitizing process – the promissory note and the security instrument (deed of trust or mortgage). In this case, on information and belief, neither documents was validly transferred.

21. Here, Plaintiff alleges that the "true sales" never took place due to the failure to follow the basic legal requirements for the transfer of a negotiable instrument and thus, Freddie and Chase did not acquire any legal, equitable, and

pecuniary interest in plaintiff's Note and Mortgage. As a result, thereof, Freddie and Chase, which purports to be plaintiff's creditor, actually has no secured or unsecured right, title, or interest in plaintiff's Note and Mortgage, and has no right to collect mortgage payments, demand mortgage payments, or report derogatorily against plaintiff's credit.[4]

22. Plaintiff further alleges that, on information and belief, Washington Mutual Bank, FA ("WAMU"), the original beneficiary, been dissolved and the full value of the Note and Mortgage has been pain, in full, for plaintiff's Note and Mortgage, as reflected in Exhibit "A" (endorsement of Washington Mutual which states 'Pay to the Order of without recourse Washington Mutual Bank FA signed by Cynthia Riley, President' (including but not limited to, Credit Defaults Swaps and other mortgage insurance products). As a result of these mortgage insurance payouts, Freddie and Chase have been paid in full on Plaintiff's debt obligation.

23. Nonetheless, Freddie and Chase attempt to take advantage of the complex structured finance system to defraud yet another homeowner. Plaintiff anticipates that Freddie and Chase will seek a Court-sanctioned bailout by submitting a blatantly fabricated "Substitution of Trustee" via a Request for

---

[4] Plaintiff's allegations are supported by the recent ruling of the Massachusetts Supreme Judicial Court in *U.s. Bank vs. Ibanez* SJC-10694, 2011 WL 38071. In *Ibanez*, the Court invalidated two foreclosure sales, finding that the lower court did not err in concluding that the securitization documents submitted by U.S. Bank and Wells Fargo failed to demonstrate that they were the holders of the mortgages. The court rejected the banks' argument that the mortgages were transferred via the applicable Pooling and Servicing Agreement and made clear that, to foreclose, the banks must prove a complete and unbroken chain of title from origination to securitization trust in full compliance of the PSA, i.e. established ownership of the mortgage.

VERIFIED COMPLAINT
PAGE 10

Judicial Notice, thereby committing fraud upon the Court, and attempting to further mislead Plaintiff into believing that Freddie and Chase is his actual creditor, and is entitled to enforce his obligation.

24. Plaintiff does not dispute that he owes money on his mortgage obligation.[5] Rather, Plaintiff disputes the amount owed, and seeks the Court's assistance in determining who the holder in due course is of his Note and Deed of Trust, and specifically what rights, if any, Freddie and/or Chase has to claim a secured or unsecured interest in Plaintiff's Note and Mortgage.

25. Plaintiff's information and belief is based on (1) a title report and analysis of the Property's county records; (2) direct written and oral communications with Defendants; (3) his counsel's research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, and publically available securitization documents and practices; (4) a review of the purported "Substitution of Trustee" signed by Jodi Sobatta; (5) a review of the purported "Trustee's Deed Upon Sale" signed by Karla Sanchez; and (6) an audit of Freddie's filings with the Securities and Exchange Commission ("SEC"), including Freddie's 424B5 Prospectus and the Pooling and Servicing Agreement ("PSA").

---

[5]  However, simply because Plaintiff does not dispute this fact, the Court should not condone Freddie and Chase's fraudulent and predatory mortgage servicing practices and allow it to collect on money it was not owed. Simply put, the Court should not allow Freddie or Chase to trample over 200 years of well-settled property laws just because Plaintiff "owes somebody the money."

26. On or about January 22, 2007, Plaintiff executed a Note and Mortgage in favor Washington Mutual Bank, FA (hereinafter "WAMU"), obtaining a loan on the Property. California Reconveyance Company was named on the Deed of Trust as the trustee and WAMU was the beneficiary of the Deed of Trust.

27. Plaintiff alleges and believes thereon that on or around the time of the origination of Plaintiff's loan, WAMU attempted to securitize and sell his loan to another entity or entities. **That entity was *not Chase or Freddie.***

28. Plaintiff alleges on information and belief that WAMU never sold, transferred, or granted his Note or Mortgage to the Sponsor, Depositor,  Chase or Freddie, and that Freddie is merely a third-party stranger to the loan transaction. Furthermore, Plaintiff alleges that none of the Defendants or Doe Defendants can demonstrate or document that Plaintiff's Note was ever properly endorsed, and transferred to Chase or Freddie. In fact, Plaintiff has requested that Freddie and/or Chase validate his debt. Although this information should be readily available to any mortgage servicer, Freddie and/or Chase has failed to provide any evidence to verify the owner and amount of Plaintiff's Mortgage or validate the claim to Plaintiff's debt obligation.

29. Plaintiff alleges on information and belief that WAMU never sold, transferred, or granted his Note or Mortgage to Chase or Freddie, and that Chase and/or Freddie is merely a third-party stranger to the loan transaction.

Furthermore, Plaintiff alleges that none of the Defendants or Doe Defendants can demonstrate or document that Plaintiff's Note was ever properly endorsed, and transferred to Chase or any Defendant. In fact, Plaintiff has requested that Chase verify and validate his debt. Although this information should be readily available to any mortgage servicer, Chase has failed to provide any evidence to verify the owner and amount of Plaintiff's Mortgage or validate the claim to Plaintiff's debt obligation.

30. On or about April 14, 2009, Jodi Sobotta, purportedly the "Attorney in Fact" for JP Morgan Chase, allegedly executed a document purporting to be a "Substitution of Trustee" (Substitution"), in which she intentionally misrepresented to Plaintiff in writing that JP Morgan Chase and/or Quality had acquired an interest in his Note and Mortgage, and that Washington had endorsed, transferred, and negotiated Plaintiff's Note to Chase. Moreover, the fraudulent document was signed on April 14, 2009 **but not notarized until three (3) days later, on April 17, 2009 in Minnesota**. In fact, no such transfer of interest took place, a fact that Defendants were very much aware of. *See* **Exhibit "A"**, attached hereto is a true and correct copy of the Substitution, executed on April 14, 2009. Plaintiff specifically disputes the contents and authenticity of this document.

31. Moreover, the above document violates Cal. Civ. Code section §1095.

Cal. Civ. Code section §1095 states "When an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact."

32. The dubious "Substitution" raises numerous red flags and further demonstrates that Plaintiff's Note and Mortgage were not deposited into the Trust by the closing date, and that the "Substitution" was fabricated in attempt to "paper over" the fatal securitization defects.

33. Plaintiff alleges that the failure to securitize his Note makes it impossible

for Chase or Freddie to claim, allege or assert that it was assigned, transferred or granted Plaintiff's Note or Mortgage, or any interest therein, in any manner whatsoever. Plaintiff also alleges that the failure to securitize his Note and Mortgage has resulted in an unperfected lien that Defendants cannot enforce in any manner whatsoever. [6]

34. Plaintiff relied on Chase and/or Quality and/or Freddie's

---

[6] These allegations are identical to those brought by the Nevada Attorney General against Bank of America, BAC Home Loans Servicing, and Recontrust in which Attorney General Catherine Cortez Masto alleges that these entities engaged in unlawful and deceptive practices by misrepresenting to homeowners that they had authority to foreclose despite the fact that there were fatal deficiencies in transfers to the securitization Trusts. *State of Nevada vs. Bank of America et al.*, No. 3-11-cv-00135-RCJ, (C.D. Nev. August 30, 2011). The AG concluded that, "[t]hese are not mere technicalities. The PSA's spelled out specific procedures in order to ensure a proper transfer, protect the Trusts as the holders in due course, and avoid subjecting the Trusts to taxation. In addition, borrowers need to know the actual holders of their mortgages so that, for example, they can investigate and assert available defenses in foreclosures, including that the agent of the trustee lacks authority or standing under the Note." *Id.* at ¶ 146.

VERIFIED COMPLAINT
PAGE 14

misrepresentations and has been damaged in the following ways: (1) multiple parties may seek to enforce his debt obligation against him; (2) the title to his home has been clouded and rendered unmarketable, as any would-be buyer of Plaintiff's home will find themselves in legal limbo, unable to know with any certainty whether they can safely buy Plaintiff's home or get title insurance; (3) he has paid or is paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) he is unable to determine whether he sent his monthly mortgage payments to the right party; and (5) he has expended significant funds to cover the cost of attorneys' fees and related costs.

35. In addition to seeking compensatory, consequential, punitive, and other damages, Plaintiff seeks Declaratory Relief as to whether the Deed of Trust (Mortgage) secured any obligation of Plaintiff in favor of Chase and/or Freddie, such that either of them can collect Plaintiff's mortgage payments, demand payment or engage in debt collection activities.

## IV. THE FABRICATED SUBSTITUTION OF TRUSTEE IS A FRAUDULENT DOCUMENTS THAT CONVEYED NO LEGAL AUTHORITY TO QUALITY TO ACT AS THE SUBSTITUTED TRUSTEE

36. The Deed of Trust names California Reconveyance Corporation as Trustee.

37. On or about April 14, 2009, Chase caused a document purporting to be a

Substitution of Trustee ("Substitution") to be recorded with the County of Los Angeles. The Substitution alleged that "WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust . . hereby substitutes Quality Loan Service Corporation, . . . as Trustee under said Deed of Trust." The Substitution was purportedly signed by "Jodi Sobatta," as "Attorney in Fact." for JP Morgan Chase Bank, National Association. Plaintiff alleges that so such transfer ever occurred, and that Jodi Sobatta is not the "Attorney in Fact" for Chase or anyone.

38. Provision 24 of the Deed governs the Substitution of Trustee. It provides in relevant part:

> "**Lender,** at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument **executed and acknowledged by Lender** ... This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution. (emphasis added)." A true and correct copy of said Deed is attached hereto as **Exhibit "B"**, and incorporated herein

39. In violation of Provision 24, and Cal. Civ. Code section §2934(a), the lender party failed to file a valid Substitution of Trustee, substituting Quality Loan Service Corporation, as the new trustee. Plaintiff alleges the recorded Substitution is void, as a matter of law, because Chase was not the current "Lender" at the time of the execution of the Substitution.

40. Chase and/or Quality Loan Service Corporation (hereinafter "Quality")(in its capacity as the purported substituted trustee) recorded a Substitution of Trustee claiming that as the present beneficiary, Chase desired to

substitute Quality in as the trustee. Plaintiff alleges that no such substitution occurred.

41. Plaintiff alleges that Jodi Sobatta is an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever.

42. Jodi Sobatta was not the "Attorney in Fact" of Chase and in fact, the Substitution was fraudulently signed without Chase's knowledge or authorization.

43. Moreover, the document was not properly notarized. The document allegedly was signed on April 14, 2009, yet it was not notarized **until April 17, 2009, three (3) days later in Minnesota**.

44. Jodi Sobatta was never, in any manner whatsoever, appointed "Attorney in Fact" by Chase, and thus giving her no corporate or legal authority from Chase, or the lender's successors and assigns, to execute the purported "Substitution." This was an intentional act undertaken by Chase and/or Quality, done knowingly with specific intent that the consequences of their actions be brought to fruition, which they have as evidenced by the instant debt collection activities and pending unlawful detainer action.

45. The "Substitution" is a fraudulent document, and the execution, filing,

and recordation of the document was created for the purpose of facilitating and aiding and abetting the illegal, deceptive, and unlawful collection and attempts to collect on Plaintiff's obligation.

46. Attempting to "substitute" Quality under said Deed of Trust, as Defendants did here, does not allow Quality to act as trustee under the Deed of Trust. As such, Quality had no legal or equitable authority to hold the Trustee's Sale and any actions done by Quality must be set aside.

## V. PLAINTIFF HAS SUFFERED, AND CONTINUES TO SUFFER SIGNIFICANT MONETARY, LEGAL, AND EQUITABLE DAMAGES

47. The conduct described above by Chase, Quality, and/or Freddie, was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage. However, despite such knowledge, said Defendants continued to demand and collect Plaintiff's mortgage payments.

48. Defendants engaged and are engaging in a pattern and practice of defrauding Plaintiff, in that, on information and belief, during the entire life of the mortgage loan, Defendants failed to properly credit payments made, incorrectly calculated interest on the accounts, and failed to accurately debit fees.

49. On information and belief, at all times material, Chase, Freddie, and/or

Quality and other defendants, had and have actual knowledge that Plaintiff's accounts were not accurate, but that Plaintiff would continue to make further payments based on Defendant's inaccurate accounts.

50. On information and belief, Plaintiff make payments based on the improper, inaccurate, and fraudulent representations as to Plaintiff's accounts.

51. As a direct and proximate result of the actions of Defendants, and each of them, as set forth above, Plaintiff overpaid in interest.

52. As a direct and proximate result of the actions of Defendants, and each of them, as set forth above, Plaintiff's credit and credit score have been severely damaged. Specifically because of the derogatory credit reporting on his credit report by Chase, and/or Quality, Plaintiff is unable to refinance out his present loan, buy another property, or sell his home. overpaid in interest.

53. As a direct and proximate result of the actions of Defendants, and each of them, as set forth above, the title to Plaintiff's home has been slandered, clouded, and its salability has been rendered unmarketable.

54. As a direct and proximate result of the actions of Defendants, and each of

VERIFIED COMPLAINT
PAGE 19

them, as set forth above, Plaintiff does not know who the current beneficiary of his Note and Mortgage actually is, such that he is now subject to double financial jeopardy.

55. As a direct and proximate result of the actions of Defendants, and each of them, as set forth above, Plaintiff is required to employ attorneys to defend him from the frivolous and illegal Unlawful Detainer action now pending in State Court.

56. As a direct and proximate result of the actions of Defendants, and each of them, as set forth above, *multiple* parties can attempt to enforce Plaintiff's debt obligation.

57. The conduct of Chase, Quality, and/or Freddie as well as all other Defendants and one or more of the Doe Defendants has led to the imminent loss of Plaintiff's home and to pecuniary damages. The pecuniary damages include, but are not limited to, the costs of over calculation and overpayment of interest, the costs of repairing Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, the costs associated with removing the could from his property title and attorneys' fees, in an amount to be proven at trial.

58. The conduct of Chase, Freddie, Quality, LSI and one or more of the Doe

Defendants was malicious because Defendants did not know the identity of the current and true beneficiary of Plaintiff's Note and Deed of Trust, yet the intentionally and fraudulently covered up this defect by wrongfully recording fraudulent documents including, but not limited to the, Substitution of Trustee, which would enable them to ***illegally and fraudulently*** collect on Plaintiff's debt and pursue Plaintiff via a Trustee's Sale. These illegal and fraudulent actions also essentially rendered the title to the property unmarketable.

59. The title to Plaintiff's Property has been rendered unmarketable and unsalable because of the possibility of multiple claims being made against Plaintiff's debt and underlying security (the Subject Property). F the Substitution of Trustee and all subsequent fraudulently recorded instruments are not cancelled and set aside, Plaintiff will be incurably prejudiced. Plaintiff will be denied the opportunity to identify and negotiate with his ***true creditor*** and exercise his right to verify and validate his debt.

60. Plaintiff has offered to and is ready, willing and able to unconditionally tender his obligation.[7]

---

[7] Case law makes clear that **Plaintiff is only required to allege a credible offer of tender** not actually tender. *Alicia v. GE Money Bank,* No. C 09-0031 SBA, 2009 WL 2136969 at *3 (N.D. Cal. July 16, 2009)("… debtor must allege a credible tender of the amount of the secured debt…"). Moreover, tender is *not* required when the owner's action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *Sacchi v. Mortgage Electronic Registration Systems, Inc.* No CV 11-1658 AHM, 2011 WL 2533029 (C.D. Cal June 24, 2011), at *16 (emphasis added)(citing *Onfrio v. Rice* (1997) 55 Cal.App.4th 413, 424; *Stockton v. Newman* (1957) 148 Cal.App.2d 558, 564. *See also, Foulkrod v. Wells Fargo Financial California Inc.,* No. CV 11-732-GHK (AJWx)(C.D. Cal. May 31, 2011)(". . . requiring plaintiff to tender the amount due at this time would be illogical and inequitable given that he disputes that Wells Fargo has any rights under the loan").In light of

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
### DECLARATORY RELIEF [28 U.S.C. §§2201, 2202]
(Against ALL Defendants & and DOES 1 through 50, Inclusive)

61. Plaintiff refers to, repeats, and realleges each of the allegations in all paragraphs herein above of this Complaint and incorporates said allegations into this cause of action as though fully set forth herein.

62. Section 2201(a) if Title 28 of the United States Code states:

*In a case of actual controversy within its jurisdiction, except with respect to Federal Taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.*

63. Section 2202 of Title 28 of the United States Code states:

*Further necessary or proper relief based on a declaratory judgment or decree may be granted after reasonable notice and hearing against any adverse party whose rights have been determined by such judgment.*

---

the fact that Plaintiff contests the legitimacy of the Defendants' claim t the mortgage payments, it would be *__illogical and inequitable__* to require Plaintiff to actually tender the amount given that Plaintiff disputes whether Defendants have any rights under the loan. *See Onofrio v. Rice* (1997) 55 Cal.App.4[th] 413, 424.

64. Plaintiff alleges that neither Freddie or Chase have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignment has no value since the Deed of Trust is wholly unsecured.

65. On or about February 23, 2012, Defendants claim they have a secured enforceable interest in, and perfected lien against, the Plaintiff's Note, Deed of Trust and Property.

66. Thus, the competing allegations made by Plaintiff, above, establish that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.

67. Accordingly, Plaintiff request that the Court make a finding and issue appropriate orders stating that none of the named Defendants or Doe Defendants, have any right or interest in Plaintiff's Note, Deed of Trust, or the Property which authorizes them, in fact or as a matter of law, to collect Plaintiff's mortgage payments or enforce the terms of the Note or Deed of Trust in any manner whatsoever.

68. Plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) Plaintiff will be denied the opportunity to identify his true and current creditor/lender and negotiate with them; (2) he will

be denied the right to conduct discovery and have Freddie or Chase's claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it; and (3) he will be denied the opportunity to discover the true amount he still owes minus any illegal costs, fees and charges.

69. Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to whether Freddie or Chase's claim against Plaintiff is enforceable and whether it is secured or unsecured by any right, title, or interest in Plaintiff's Property.

70. Furthermore, it is necessary that the Court declare a stay on all eviction proceeding, now pending, in State Court by Defendants until the conclusion of this instant matter. If the Court does not issue such a stay, Plaintiff will suffer irreparable injury, for which pecuniary compensation in inadequate, in that the property is unique and such dispossession would have the effect of causing Plaintiff to lose his Property though the illegal actions of the Defendants, and each of them.

71. Furthermore, the conduct of Defendants, and each of them, and Quality as their agent, and one or more of the Doe Defendants, as herein described, was so malicious and contemptible that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount

appropriate to punish Defendants, and each of them, and to deter others from engaging in similar conduct.

**SECOND CAUSE OF ACTION**
**TEMPORARY RESTRAINING ORDER, PRELIMINARY AND**
**PERMANENT INJUNCTIONS**
(Against ALL Defendants & and DOES 1 through 50, Inclusive)

73. Plaintiff refers to, repeats, and realleges each of the allegations in all paragraphs herein above of this Complaint and incorporates said allegations into this cause of action as though fully set forth herein.

74. Beginning on or about April 14, 2009 and continuing to the present time, Defendants, and each of them in concert, wrongfully and unlawfully issued a Notice of Default and Election to Sell under Deed of Trust (Exhibit C, Notice of Default and Exhibits D & E, Notice of Trustee's Sale).

75. Defendants, and each of them, threatened to and unless restrained will evict Plaintiff and have allegedly sold at Trustee's Sale, Plaintiff's Property, all to Plaintiff's great and irreparable injury, for which pecuniary compensation would not afford adequate relief, in that the property is unique and such sale and dispossession would have the effect of causing Plaintiff to lose his home through an illegal non-judicial foreclosure.

76. As a proximate result of Defendants, and each of their, wrongful conduct,

Plaintiff has been damaged in an amount according to proof. Plaintiff will be

further damaged in like manner so long as Defendants', and each of their, conduct

continues. The full amount of this damage is not now known to Plaintiff, and

Plaintiff will amend this Complaint to state this amount when it becomes known

to him or on proof of the damages.

### THIRD CAUSE OF ACTION
### QUIET TITLE TO REAL PROPERTY
(Against ALL Defendants & and DOES 1 through 50, Inclusive)

77. Plaintiff refers to, repeats, and realleges each of the allegations in all

paragraphs herein above of this Complaint and incorporates said allegations into

this cause of action as though fully set forth herein.

78. At all times hereto relevant, Plaintiff Eddie Valencia has been, and is,

the

true and lawful owner of record of the subject PROPERTY.

79. Plaintiff is entitled to relief by a judicial order and decree establishing

and affirming Plaintiff's lawful title in and to the PROPERTY, invalidating all

unlawful claims against said title, including the Recorded of Trust and other

fraudulently recorded Instruments, according to proof, and thereby quieting title

therein in such manner as the court finds to comport to law, equity, and proof.

80. Plaintiff is also entitled to such further relief as the court may deem to

comport with law and the principles of equity, and to be just, reasonable, and proper in the premises, according to proof.

### FOURTH CAUSE OF ACTION
### VIOLATION OF 12 U.S.C. §2605 (RESPA)
(Against ALL Defendants & DOES 1 through 50, Inclusive)

81. Plaintiff refers to, repeats, and realleges each of the allegations in all paragraphs herein above of this Complaint and incorporates said allegations into this cause of action as though fully set forth herein.

82. The subject Loan is a federally regulated mortgage loan and is subject to the federal Real Estate Procedures Act (RESPA) and its implementing regulation, Regulation X.

83. On or about January 20, 2012, Plaintiff sent a Qualified Written Request, ("QWR") via U.S. Mail.

84. On information and belief Chase received the QWR on or about January 23, 2012.

85. The QWR contained information to enable Chase to identify Plaintiff's Loan and also contained requests for information of the loan, specifically the identity and contact information of the holder in due course of Plaintiff's Note, accumulated late fees and charges, and requested information to verify the validity of the purported debt allegedly owed to Chase.

86.Chase failed to provide the contact information for the purported holder of Plaintiff's Note as required by §2605, et seq. Instead Chase responded by providing a partial account history of Plaintiff's account. Chase's responses did not respond to Plaintiff's request and did not comply with the requirements of §2605, et seq.

87.Because the Mortgage Loan is subject to RESPA and Regulations X, all Defendants were required to comply with Section 6 of RESPA appearing at 12 U.S.C. §2605. Defendant violated Section 6 of Regulation X upon receipt of Plaintiff's QWR by their actions including, but not limited to: (a) failure to make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of the correction; and (b) failure to protect Plaintiff's credit rating upon receipt of Plaintiff's QWR by furnishing adverse information regarding payment to credit reporting agencies as defined in §603 of the Fair Credit Reporting Act, 15 U.S>C. §1681(a).

88.Thus, Chase and/or Freddie violated 12 U.S.C. §2605 and is subject to statutory damages, civil liability, penalties, attorneys' fees and actual damages. *See* 12 U.S.C. §2605. The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiff's loan, the costs of repairing Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit

limits, costs associated with removing the could on his property title and setting

aside the trustee's sale, and attorneys' fees and costs, in an amount to be proven at

trial, but in excess of $75,000.00.

89.As a direct and proximate result of the violations of RESPA and

Regulation X by Chase and/or Freddie, Plaintiff has suffered actual pecuniary

damages, including but not limited to statutory damages, civil liability, and

attorneys' fees and costs, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## VIOLATION OF 15 U.S.C. §1692
(Against ALL Defendants & DOES 1 through 50, Inclusive)

90.Plaintiff refers to, repeats, and realleges each of the allegations in all

paragraphs herein above of this Complaint and incorporates said allegations into

this cause of action as though fully set forth herein.

91.Federal law prohibits the use of "any false, deceptive, or misleading

representation or means in connection with the collection of any debt . . .

including the false representation of . . . the character, amount, or legal status of

any debt. . . and the threat to take any action that cannot legally be taken. . ."

92.In illegally attempting to collect on Plaintiff's debt obligation in the

manner described herein, Defendant Quality, as the purported assignees, and

Chase and/or Freddie, as the purported mortgage servicer/beneficiary:

(a) Falsely represented the status of the debt, in particular, that it was due and owing to Defendant Chase and/or Freddie at the time the suit was filed;

(b) Falsely represented or implied that the debt was owning to Defendant Freddie as an innocent purchaser for value, when in fact, such an assignment had not been accomplished;

(c) Threatened to take action, namely engaging in collection activities that cannot legally be taken by them;

(d) Initiating an unlawful detainer action when defendant Freddie had no legal or equitable right to do so; and

(e) Attempted to collect on the promissory note under false pretenses; namely that Quality and/or Freddie was assigned Plaintiff's debt when, in fact they were not.


## SIXTH CAUSE OF ACTION
## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION §17200, et seq.
(Against ALL Defendants & DOES 1 through 50, Inclusive)

93. Plaintiff refers to, repeats, and realleges each of the allegations in all paragraphs herein above of this Complaint and incorporates said allegations into this cause of action as though fully set forth herein.

94. Defendants' conduct, for the reasons stated herein, is in direct violation

of 12 U.S.C. §2605(e), et seq.

95. Defendants' conduct, for the reasons stated herein, is in direct violation of Cal. Penal Code section §532(f)(a)(4).

96. California Business and Professions Code section §17200, et seq, prohibits acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct which is likely to deceive and is fraudulent in nature.

97. As more fully described above, Defendants' acts and practices are unlawful, unfair, and fraudulent. This conduct is ongoing ad continues to this date.

98. Defendants engage in unfair and unlawful[8], and fraudulent business practices with respect to mortgage loan servicing, and related matters by, among other things:

    (a) Executing and recording false and misleading documents;[9]

    (b) Executing and recording documents without legal authority to do so;

---

[8] "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state or municipal, statutory, or court-made. *Saunders v Superior Court* (1994) 27 Cal.4th 832; *Hewlett v. Squaw Valley* (1997) 54 Cal.4th 499.

[9] Defendants' recording of the Substitution of Trustee, Notice of Default and Election to Sell under Deed of Trust, Notice of Trustee's Sale, and Trustees' Deed Upon Sale violate Cal. Penal Code section §532(f)(a)4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorders' office which that person knows to contain a deliberate misstatement, misrepresentation, or omission. The facts demonstrate that Defendants, and each of them, have committed mortgage fraud by filing the above identified documents with the county recorders' office with the knowledge that the documents contained a deliberate misstatement, misrepresentation, or omission of fact.

(c) Failing to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section §1095[10];

(d) Demanding and accepting payments for debts that were non-existent;

(e) Violating the Security First Rule;

(f) Reporting payments as late to credit bureaus without the legal right or authority to do so;

(g) Acting as a beneficiary without the legal authority to do so, and;

(h) Other deceptive business practices as described herein.

99. As more fully described above, Defendants' acts and practices are likely to deceive members of the public.

100.  As more fully described above, Defendants' acts and practices are unfair and the harm caused by the conduct outweighs any benefit that the conduct may have.

101.   Plaintiff alleges that by engaging in the above described acts and/or

---

[10]  Cal. Civ. Code section §1095, states "When an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact."

practices as alleged herein, Defendants violate several laws including Cal. Bus and Prof. Code §17200, et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

102.   Plaintiff alleges that Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive advantage over their competitors. The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

103.   The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiff.

104.   By reason of the foregoing, Defendant have been unjustly enriched and should be required to make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. And Prof. Code sections §§ 17203 and 17204.

105.   As a direct and proximate result of the actions of Defendants, and each of them, stated above, Plaintiff has been injured in that a cloud has been placed upon title to Plaintiff's Property and Defendants, have failed to remove this cloud  from Plaintiff's title.

106.   Plaintiff is entitled to an order compelling Chase and Freddie and any

other defendants claiming an interest n and to the Property to take any and all actions necessary to remove the cloud they have place upon title and an order enjoining such Defendants from taking such actions again in the future.

### SEVENTH CAUSE OF ACTION
### CANCELLATION OF INSTRUMENTS
(Against ALL Defendants & DOES 1 through 50, Inclusive)

107.   Plaintiff refers to, repeats, and realleges each of the allegations in all paragraphs herein above of this Complaint and incorporates said allegations into this cause of action as though fully set forth herein.

108.   As a direct and proximate of Defendants' recordation of the aforesaid Deed of Trust, Substitution of Trustee, and other fraudulently recorded Instruments, Plaintiff has suffered loss, damage, and harm, and is likely to continue to suffer loss, damage, and harm unless said recorded instruments are cancelled and he parties returned to *status quo ante*.

109.   Plaintiff is informed and believes, and therefore alleges, that Defendants, and each of them, acted willfully and with a conscious disregard for Plaintiff's rights and with a specific intent to defraud and injure Plaintiff, by causing the Substitution of Trustee, Notice of Default, Notice of Trustee Sale, Trustees Deed Upon Sale, and other fraudulently recorded Instruments to be prepared and recorded without a factual or legal basis for doing so.

110.   Upon information and belief, these acts by Defendants, and each of

them, constitute fraud, oppression and malice under California Civil Code §3294.

111.   The pattern and practice of the Defendant's, and each of their, use of "robo-signers" coupled with the false notarization of recorded Instruments constitutes a willful and conscious disregard for the rights of Plaintiff and were conducted for the sole purpose of the greed and profit for the benefit of Defendants, and each of them.

112.   These deliberate actions by Defendants, and each of them, constituted a crime in the State of California and fully support the imposition of punitive damages.

113.   By virtue of Defendant's willful and wrongful conduct as herein alleged above, Plaintiff is entitled to general and special damages according to proof at trial, but not less than $25,000, as well as punitive and exemplary damages as determined by this Court.

114.   Wherefore, Plaintiff is entitled to relief by a judgment pursuant to California Civil Code §§3412, *et. seq.* , declaring the said Instruments to be void *ab initio,* commanding the County Recorder of Los Angeles County, California, to enter a *nunc pro tunc* cancellation of said Instruments, and of each of them, in the Official Records of the Office of the County Recorder of said county.

## EIGHTH CAUSE OF ACTION
### FRAUD IN THE CONCEALMENT
(Against ALL Defendants & DOES 1 through 50, Inclusive)

115.   Plaintiff refers to, repeats, and realleges each of the allegations in all paragraphs herein above of this Complaint and incorporates said allegations into this cause of action as though fully set forth herein.

116.   Defendants, and each of them, concealed the fact that Plaintiff's Note was sold, thus separating the Note from the Deed of Trust (DOT) and making the Note unsecured and the assigned DOT a nullity and void.

117.   Moreover, by the deliberate use of "robo-signers", fraudulent notarization, back-dating documents, and concealing the sale Defendants, and each of them, concealed the fact that Plaintiff's loan changed in character, which affected the security interest in Plaintiff's property.

118.   Changing the character of the Loan in this way had a materially negative effect on Plaintiff that was known by Defendants, and each of them, but not disclosed to Plaintiff.

119.   Defendants, and each of them, knew or should have known that had the truth been disclosed, Plaintiff would not have entered into this Loan or would not have continued to make payments to Defendant.

120.   Defendants, and each of them, intended to induce Plaintiff to make payments to Defendants based on these misrepresentations and improper lack of disclosures and concealments.

121.   In fact, Defendants, and each of them, altered the deed of trust in

order to conceal the truth concerning Investors being the true owner of Plaintiff's note.

122.   Defendants, and each of them, employed robo-signers and fraudulent notarization specifically designed to conceal the deliberate and malicious actions of defendants, and each of them, from Plaintiff.

123.   Plaintiff's reasonable reliance on the misrepresentations were detrimental in that Plaintiff made payments for over four (4) years.

124.   But for the failure to disclose the true and material terms of the transaction, Plaintiff could have been alerted to issues of concern. Plaintiff would have known of Defendants, and each of their, true intentions and profits from the Loan and the adverse effect on the value of Plaintiff's home.

125.   Defendants, and each of their, failure to disclose that it did not have the Note induced Plaintiff to pay Defendants and caused Plaintiff to have incur costs and expenses and attorney fees.

126.   As a direct and proximate result of the misrepresentations and concealments, Plaintiff was damaged in an amount to be proven at trial, including, but not limited to, cost of payments on the loan, damage to Plaintiff's financial security and credit, costs, expenses and attorneys' fees.

127.   Defendants, and each of them, are guilty of malice, fraud, perjury, and/or oppression.

128.   Defendants' and each of their actions were and are malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff.

129.   Defendant's, and each of their, false representation or concealment of a "material" fact would be deemed a "material" if "a reasonable (person) would attach importance to its existence or nonexistence in determining his choice of action in the transaction".

130.   Defendants, and each of them, made the representation with knowledge of its falsity or without sufficient knowledge of the subject to warrant a representation.

131.   Defendants', and each of their, representations were made with the intent to induce Plaintiff to act upon them.

132.   Plaintiff entered into the contract in 'justifiable reliance' upon the representations.

133.   As such, Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

## NINTH CAUSE OF ACTION
### FRAUD IN THE INDUCMENT
(Against ALL Defendants & DOES 1 through 50, Inclusive)

134.   Plaintiff refers to, repeats, and realleges each of the allegations in all

paragraphs herein above of this Complaint and incorporates said allegations into this cause of action as though fully set forth herein.

135.   Defendants, and each of them, intentionally misrepresented to Plaintiff that Defendants were entitled to exercise the Power of Sale provision contained in the Deed of Trust.

136.   In fact, Defendants are not entitled to exercise the Power of Sale and have no legal, equitable or actual beneficial interest whatsoever in the property.

137.   Defendant Freddie misrepresented that they are the "OWNER" of the Note and the beneficiary of the Deed of Trust.

138.   Defendant Chase misrepresented that they are the "OWNER" of the Note and the beneficiary of the Deed of Trust.

139.   However, this is not true and is a misrepresentation of a material fact.

140.   Defendants were and are attempting to collect on a debt to which they have no legal, equitable or pecuniary interest in.

141.   Defendants are fraudulently alleging rights to Plaintiff's property which they have no monetary or pecuniary interest and this conduct is outrageous, especially in light of the fact they have full knowledge of the fact as contained herein.

142.   Defendants' failure to disclose that the loan was sold to an

INVESTOR and the Note and Deed of trust were severed, breaking the chain of title and making the security interest void, induced Plaintiff to pay Defendant Chase.

143.   The material misrepresentations made by Defendant Chase and Freddie that it owned the loan was made with intent to cause Plaintiff to reasonably rely on the misrepresentations in order to induce Plaintiff to pay said Defendants. Plaintiff did in fact pay Defendants.

144.   Defendants were aware of the misrepresentations and profited from them.

145.   As a direct and proximate result of the misrepresentations and concealments, Plaintiff was damaged in an amount to be proven at trial, including, but not limited to, damage to Plaintiff's financial security and credit, costs, expenses, and attorney's fees.

146.   Defendants are guilty of malice, fraud, perjury and/or oppression.

147.   Defendant's actions were and are malicious and done willfully in conscious disregard of the rights of Plaintiff's in that the actions were calculated to injure Plaintiff.

148.   The Defendant engaged in a pattern and practice of defrauding

Plaintiff in that, during the life of the mortgage loan, the Defendants, filed false loan applications, inflated appraisals, failed to properly credit payments made on the Subject Property, and accepted payments that they were not entitled to.

149.   At all relevant times, Defendants, and each of them, had actual knowledge that Plaintiff's account did not accurately reflect actual payments made to that account by or on behalf of Plaintiff.

150.   By and through the aforesaid inaccurate accounting, Defendants made
misrepresentations of material fact by the inclusion within said accounting of fees, charges, penalties, and interest for which there was no justification, asserting thereby that the said charges and account entries were true and accurate.

151.   At the time, and at all relevant times, Defendants and each of them knew that the said representations of material fact were false, and made those misrepresentations with the intent to defraud Plaintiff.

152.   At the time, and at all relevant times, Plaintiff did not know that the said representations of material fact were false but believed them to be true, and relied thereon to his detriment. It was not until the commencement to the within dispute that Plaintiff was first able to discover the pattern of inaccurate, false representations and charges, and omissions of credits for payments made, appearing within the said account.

153.   Defendants further concealed material facts known to them but not to Plaintiff, which Defendants were duty-bound to disclose, regarding payments, notices, assignments, transfers, late fees, changed beneficiaries, and charges.

154.   Defendants concealed the said material facts with the intent to defraud Plaintiff by causing him to act in ignorance of facts which he was entitled to know, the knowledge of which would have necessarily altered Plaintiff's decisions and actions in respect to the subject matter of the within dispute.

155.   Defendants made the above-alleged false representations, and engaged in the above-alleged concealments and non-disclosures willfully and with the intention of thereby inducing Plaintiff's reliance on said representation and on the mistaken belief that he had full, complete, and accurate information from Defendants.

156.   Plaintiff did, in fact, justifiably rely on the completeness and accuracy of Defendant's accounting and claims of ownership.

157.   As a direct and proximate result of Plaintiff's justifiable reliance on

the completeness and accuracy of Defendants' accounting and claims of ownership, Plaintiffs' suffered loss, damage and harm including, but not limited to, damage to his credit standing, costs and potential future loss of his property.

158.   As a direct and proximate result of Defendant's fraudulent conduct, as herein alleged, Plaintiff has suffered loss, damage, and harm, and is entitled to an award of damages on account thereof in such sum as may accord with proof at trial.

159.   As an unavoidable consequence of Defendants' fraudulent conduct as herein alleged, Plaintiff has incurred and accrued substantial cost and expense in reasonable, prudent and justified efforts to mitigate damage wherefore Plaintiff is entitled to an award of such special and/or consequential damages as may be allowable by law and as may accord with proof at trial.

160.   Defendants' fraudulent conduct, as herein alleged, was wanton, willful, malicious, and unconscionable, wherefore Plaintiffs are further entitled to imposition upon Defendants of exemplary damages in such sum as the court may deem sufficient to dissuade Defendants and others similarly situated from engaging in identical or similar conduct in the future.

161.   Defendant's false representation or concealment of a 'material' fact

would be deemed a 'material' if a 'reasonable (person)' would attach importance to its existence or nonexistence in determining his choice of action in the transaction.

162.   Defendant made the representation with knowledge of its falsity or without sufficient knowledge of the subject to warrant a representation.

163.   Defendant's representation was made with the intent to induce plaintiff to act upon it.

164.   Plaintiff entered into the contract in 'justifiable reliance' upon the representation.

## TENTH CAUSE OF ACTION
## ACCOUNTING
(Against ALL Defendants & DOES 1 through 50, Inclusive)

165.   Plaintiff refers to, repeats, and realleges each of the allegations in all paragraphs herein above of this Complaint and incorporates said allegations into this cause of action as though fully set forth herein.

166.   Freddie has purportedly held themselves to be Plaintiff's creditor. As a result of this purported relationship with Plaintiff, said Defendants has a duty to Plaintiff to properly account for payments made by Plaintiff.

167.   As a result of the aforementioned fraudulent conduct, Plaintiff paid

his mortgage payments for a period of approximately four years. However, for reasons stated above, none of these payments were actually owed to Freddie or Chase. For that reason, these payments are due to be returned to Plaintiff in full.

168.   The amount of money paid to Chase or Freddie and claimed still owed to Defendant Chase or Freddie is unknown to Plaintiff

169.   That none of these Defendants, and each of them, were ever disclosed as the beneficiary in accordance with California Code of Civil Procedure section 2924 et seq.

170.   Plaintiffs further allege on information and belief that none of these alleged beneficiaries or representatives of the Beneficiary have the original note to prove that they are in fact the party authorized to conduct the foreclosure.

**ELEVENTH CAUSE OF ACTION**
**WRONGFUL FORECLOSURE**
(Against ALL Defendants & and DOES 1 through 50, Inclusive)

171.   Plaintiff refers to, repeats, and realleges each of the allegations in all paragraphs herein above of this Complaint and incorporates said allegations into this cause of action as though fully set forth herein

172.   Plaintiff further alleges that the foreclosure sale of the Subject Property was not executed in accordance with the requirements of California Civil Code Sections §§1624, 2923.5, 2932.5 and Commercial Code section §3302 et seq.

173.   That the Trustee who was acting as the agent of the Principal failed to have written authorization to act for the principal and under California Civil Code Section §1624 the agency relationship must also be in written form.

174.   That the notices and foreclosure failed to conform with the provisions of California Civil Code Sections §§1624, 2923.5, 2932.5 et seq., and Commercial Code Section §3302 et seq.

175.   Plaintiffs further allege that California Civil Code section §2924 et seq. and its subparts are being applied to Plaintiffs in a manner that is unlawful, because at least in part the party acting as the Trustee proceeded with the foreclosure of Plaintiffs Subject Property notwithstanding the fact that the Trustee was not in possession of the original Note, that the Note when it was allegedly assigned to Defendant Chase, the substitution of trustee and other fraudulently signed, notarized and recorded instruments, did not covey the power of sale because it violated the terms of California Civil Code section §2932.5, that the assignment when it was made to, Chase, that the Note executed by Plaintiff was no longer a negotiable instrument because the assignment was not physically applied to the Note pursuant to the holding of **Pribus v. Bush,** (1981) 118 Cal.App.3d 1003. 747, although there was sufficient room on the back of the Note to complete the assignment, and as such the foreclosure of Plaintiff's subject property did not conform with the strict mandates of Civil Code section §2924.

76. Plaintiffs allege that the employees and/or agents of Chase and/or Freddie, as well as Quality and LSI, represented that said employees and/or agents could work-around the fact that Plaintiffs' credit was not in good standing and could get Plaintiffs approved for the loan.  Defendants did not disclose at any time to Plaintiffs that the initial loan payment would exceed their entire income.

176.  Plaintiffs allege that the loan contract, deed of trust and accompanying documents were offered to Plaintiffs on a take it or leave it basis.

177.  Plaintiffs allege that Defendants Chase and/or Freddie had a superior bargaining strength over Plaintiffs, and that Plaintiffs were relegated only the opportunity to adhere to the contract or reject it, that Chase and/or Freddie and/or Quality and/or LSI. drafted all of the documents related to the loan, that no negotiations were possible between Plaintiff and Chase and/or Freddie, and that the contract was a contract of adhesion.

178.  Plaintiffs allege that the loan was unconscionable in that the repayment terms were unfair and unduly oppressive, because the payments exceeded Plaintiffs entire combined income and as such, Defendants, and each of them, cannot enforce the terms and conditions of the loan against Plaintiffs, and any non-judicial foreclosure arising there from is void.

179.  Plaintiffs are informed and believe and thereupon allege that Defendants, and each of them, entered into a fraudulent scheme, the purpose of

which was to make a loan to Plaintiffs, which Defendants, and each of them, were keenly aware that Plaintiff could not afford, at a cost way above the, then prevailing market rate, made loans to Plaintiff and falsely represented to Plaintiff that they could not qualify for any other financing, that Plaintiff could not qualify under any reasonably underwriting guidelines, that such scheme was devised to extract illegal and undisclosed compensation from Plaintiff by virtue of an undisclosed yield spread premium and which Defendants, and each of them, shared in some presently unknown percentage.

180.   Circa 2009, Defendants alleged that Plaintiff became in default of the loan, this default was occasioned by the high payments, the structure of the loan and interest rate and the Subject Property. However, Plaintiff was not in default because of the prior breach of the terms of the notes by Defendants, and each of them, the performance of Plaintiffs was excused.

181.   Plaintiffs further allege that the foreclosure sale of the Subject Property was not executed in accordance with the requirements of California Civil Code Sections §§1624, 2923.5, 2932.5 and Commercial Code section §3302 et seq.

182.   That the Trustee who was acting as the agent of the Principal failed to have written authorization to act for the principal and under California Civil Code Section §1624 the agency relationship must also be in written form.

183.   That the notices and foreclosure failed to conform with the provisions of California Civil Code Sections §§1624, 2923.5, 2932.5 et seq., and Commercial Code section §3302 et seq.

184.   Plaintiffs further allege that California Civil Code section §2924 et seq. and its subparts are being applied to Plaintiffs in a manner that is unlawful, because at least in part the party acting as the Trustee proceeded with the foreclosure of Plaintiffs Subject Property notwithstanding the fact that the Trustee was not in possession of the original Note, that the Note when it was allegedly assigned to Defendant Chase, and the other fraudulently signed, notarized, and recorded Instruments, did not covey the power of sale because it violated the terms of California Civil Code section §2932.5, that the assignment when it was made to, Chase and/or Freddie, that the Note executed by Plaintiff was no longer a negotiable instrument because the assignment was not physically applied to the Note pursuant to the holding of **Pribus v. Bush,** (1981) 118 Cal.App.3d 1003, although there was sufficient room on the back of the Note to complete the assignment, and as such the foreclosure of Plaintiff's subject property did not conform with the strict mandates of Civil Code section §2924.

185.   That the Trustee and the loan servicer are acting as agents of the Beneficiary and  signing documents as the agent of the agent of the agent of the

Beneficiary for Plaintiffs Notes and the notices therein, notwithstanding the fact that the Notes were not negotiable prior to the sale of the Subject Property.

186.  That by virtue of the method and manner of Defendants carrying out Civil Code section §2924 et seq., the foreclosure of the Subject Property is void *ab initio* as a matter of law.

187.  Plaintiff alleges that Defendants, and each of them, are engaged in and continue to engage in violations of California law including but, not limited to: Civil Code section §2924 et seq. and §2932.5 et seq., and unless restrained will continue to engage in such misconduct, and that a public benefit necessitates that Defendants be restrained from such conduct in the future.

A.  **California Legislature Findings**

188.  Recently, the California Legislature **found and declared** the following in enacting California Civil Code §2923.6 on July 8, 2008:

> *(a)   California is facing an unprecedented threat to its state economy because of skyrocketing residential property foreclosure rates in California. Residential property foreclosures increased sevenfold from 2006 to 2007, in 2007, more than 84,375 properties were lost to foreclosure in California, and 254,824 loans went into default, the first step in the foreclosure process.*
>
> *(b)   High foreclosure rates have adversely affected property values in California, and will have even greater adverse consequences as foreclosure rates continue to rise. According to statistics released by the HOPE NOW Alliance the number of completed California foreclosure sales in 20'07 increased almost threefold from 1902 in the first quarter to 5574 in the fourth quarter of that year. Those same statistics report that 10,556 foreclosure sales, almost double*

*the number for the prior quarter, were completed just in the month of January 2008. More foreclosures means less money for schools, public safety, and other key services.*

*(c)    Under specified circumstances, mortgage lenders and servicers are authorized under their pooling and servicing agreements to modify mortgage loans when the modification is in the best interest of investors. Generally, that modification may be deemed to be in the best interest of investors when the net present value of the income stream of the modified loan is greater than the amount that would be recovered through the disposition of the real property security through a foreclosure sale.*

*(d)    It is essential to the economic health of California for the state to ameliorate the deleterious effects on the state economy and local economies and the California housing market that will result from the continued foreclosures of residential properties in unprecedented numbers by modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure. These Changes in accessing the state's foreclosure process are essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market when a foreclosure could have been avoided. Those additional foreclosures will further destabilize the housing market with significant, corresponding deleterious effects on the local and state economy.*

*(e)    According to a survey released by the Federal Home Loan Mortgage Corporation (Freddie Mac) on January 31, 2008, 57 percent of the nation's late-paying borrowers do not know their lenders may offer alternative to help them avoid foreclosure.*

*(f)    As reflected in recent government and industry-led efforts to help troubled borrowers, the mortgage foreclosure crisis impacts borrowers not only in nontraditional loans, but also many borrowers in conventional loans.*

*(g)    This act is necessary to avoid unnecessary foreclosures of residential properties and thereby provide stability to California's*

*statewide and regional economies and housing market by requiring early contact and communications between mortgagees, beneficiaries, or authorized agents and specified borrowers to explore options that could avoid foreclosure and by facilitating the modification or restructuring of loans in appropriate circumstances.*

189. "Operation Malicious Mortgage' is a nationwide operation coordinated by the U.S. Department of Justice and the FBI to identify, arrest, and prosecute mortgage fraud violators." San Diego Union Tribune, June 19, 2008. As shown below, Plaintiff was a victim of such mortgage fraud.

190. "Home ownership is the foundation of the American Dream. Dangerous mortgages have put millions of families in jeopardy of losing their homes." CNN Money, December 24, 2007. The Loan which is the subject of this action to Plaintiff is of such character.

191. "Finding ways to avoid preventable foreclosures is a legitimate and important concern of public policy. High rates of delinquency and foreclosure can have substantial spillover effects on the housing market, the financial markets and the broader economy. Therefore, doing what we, can to avoid preventable foreclosures is not just in the interest of the lenders and borrowers. It's in everybody's best interest." Ben Bernanke, Federal Reserve Chairman, May 9, 2008. Plaintiff alleges that Defendants had the duty to prevent such foreclosure, but failed to so act.

192.   "Most of these homeowners could avoid foreclosure if present loan holders would modify the existing loans by lowering the interest rate and making it fixed, capitalizing the arrearages, and forgiving a portion of the loan.  The result would benefit lenders, homeowners, and their communities."  CNN Money, id.

193.   On behalf of President Bush, Secretary Paulson has encouraged lenders to voluntarily freeze interest rates on adjustable-rate mortgages.  Mark Zandl, chief economist for Mood's commented, "There is no stick in the plan. There are a significant number of investors who would rather see homeowners default and go into foreclosure." San Diego Union Tribune,    72.   "Fewer than 1%· of homeowners have experienced any help "from the Bush-Paulson plan." San Diego Union Tribune, id.   Plaintiffs' are not of  that sliver that have obtained help.

194.   The Gravamen of Plaintiff's complaint is that Defendants violated State and Federal laws which were specifically enacted to protect such abusive, deceptive, and unfair conduct by Defendants, and that Defendants cannot legally enforce a non-judicial foreclosure.

195.   Plaintiff is a "debtor" as defined by the Rosenthal Act, California Civil Code §1788.2(h).

196.   Defendants are engaged in the collection of debts from consumers using the mail and telephone.

197.   Defendants regularly attempt to collect consumer debts alleged to be due to another.

198.   Defendants are "debt collectors" as defined by the Rosenthal Act, California Civil Code §1788.2(c).

199.   The purported debt which Defendants attempted to collect from Plaintiff was a "consumer debt" as defined by the Rosenthal Act, California Civil Code §1788.2(f).

**B.    Defendants Are Not Holders In Due Course Since Plaintiff Was Duped Into An Improper Loan And There Is No Effective Endorsement:**

200.   Plaintiff incurred a "debt" as that term is defined by California Civil Code §1788(d) and 15 U.S.C. § 1692a(5), when he obtained a Loan on their Personal Residence in January 22, 2007.

201.   The loan is memorialized via a Deed of Trust and Promissory Note, each of  which contain an attorney fees provision for the lender should they prevail in the enforcement of their contractual rights.

202.   Plaintiff has no experience beyond basic financial matters.

203.   Plaintiff was never explained the full terms of their loan, including but not limited to the rate of interest how the interest rate would be calculated, what the payment schedule should be, the risks and disadvantages of the loan, the prepay penalties, the maximum amount the loan payment could arise to.

VERIFIED COMPLAINT
PAGE 54

204. Certain fees in obtaining the loan, were also not explained to the Plaintiff, including but not limited to "underwriting fees," "appraisal fees," "broker fees", "loan tie in fees," etc.

205. A determination of whether Plaintiff would be able to make the payments as specified in the loan was never truly made.

206. Plaintiffs' income was never truly verified.

207. Plaintiff was rushed when signing the documents, the closing process provided no time for review and took minutes to accomplish.

208. Plaintiff could not understand any of the documents and signed them based on representations and the trust and confidence the Plaintiff placed in Defendants' predecessors.

209. Plaintiff is informed and believe that Defendants and/or Defendants' predecessors established and implemented the policy of failing to disclose material facts about the Loan, failing to verify Plaintiff's income, falsifying Plaintiff's income, agreeing to accept a Yield Spread Premium, and causing Plaintiff's Loan to include a penalty for early payment.

210. Plaintiff is informed and believe that Defendants and/or Defendants' predecessors established such policy so as to profit, knowing that Plaintiff would be unable to perform future terms of the Loan.

211.   Plaintiff is a victim of Fraud in the Factum since the forgoing misrepresentations caused him to obtain the home loan without accurately realizing, the risks, duties, or obligations incurred.

212.   The Promissory Note contains sufficient space on the note itself for endorsement whereby any assignment by allonge is ineffective pursuant to **Pribus v. Bush**, 118 Cal. App. 3d 1003 (May 12, 1981).

213.   Defendants are not holders in due course due to Fraud in Factum and ineffective endorsement.

**C.   Defendants' Lack Standing To Conduct A Non-Judicial Foreclosure Pursuant To California Civil Code §2932.5**

214.   Defendants have no standing to enforce a non-judicial foreclosure.

215.   Defendants are strangers to this transaction, and have no authority to go forward with the foreclosure and Trustee's Sale.

216.   Plaintiffs executed a Promissory Note (hereinafter the "Note")  and a Deed of Trust to WAMU.

217.   WAMU is the Lender and only party entitled to enforce the Note and any security interest with it.

218.   Chase and/or Freddie and/or Quality and/or LSI are not listed anywhere in the Deed of Trust or Promissory Note.

219.   In California, California Civil Code § 2932.5 governs the Power of sale under an assigned mortgage, and provides that the power of sale can only vest

VERIFIED COMPLAINT
PAGE 56

in a person entitled to money payments: "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded."

220.   The Los Angeles County Recorder's Office does not contain any evidence of a recorded assignment from WAMU to Chase and/or Freddie. WAMU has never assigned their rights under the Note.

221.   The power of sale may not be exercised by any of the Defendants since there was never an' acknowledged and recorded assignment pursuant to California Civil Code § 2932.5.

222.   Since the Defendants did not comply with California Civil Code §2932.5, the Notice of Default provisions of California Civil Code § 2924 and Notice of Sale provisions of California Civil Code §2924(f) were likewise never complied with.

223.   Chase and/or Freddie never complied with the Notice of Default provisions of California Civil Code §2924 and Notice of Sale provisions of California Civil Code §2924(f).

**D.     Defendants' Lack of Standing to Enforce A Non-Judicial Foreclosure Pursuant To California Commercial Code § 3301**

224.   A promissory note is personal property and the deed of trust securing a note is a mere incident of the debt it secures, with no separable ascertainable market value.   California Civil Code §§ 657, 663.   *Kirby v. Palos Verdes Escrow Co.*, 183 Cal. App. 3d 57, 62.

225.   Any transfers of the notice and mortgage fundamentally flow back to the note:

> "The assignment of a mortgage without a transfer of the Indebtedness confers no right, since debt and security are inseparable and the mortgage alone is not a subject of transfer, " *Hyde v. Mangan* (1891) 88 Cal. 319; *Johnson v, Razy* (1919)181 Cal 342; *Bowman v. Sears* (1923, Cal App) 63 Cal App 235; *Treat v. Burns* (1932) 216 Cal 216.

226.   "A mortgagee's purported assignment of the mortgage without an assignment of the debt which is secured is a legal nullity."   *Kelley V. Upshaw* (1952) 39 Cal 2d 179.

227.   "A trust deed has no assignable quality independent of the debt; it may not be assigned or transferred apart from the debt; and an attempt to assign the trust deed without a transfer of the debt is without effect."   *Domarad v. Fisher & Burke, Inc.* (1969 Cal. App. 1st Dist) 270 Cal. App. 2d 543.

228.   The Promissory Note is a negotiable instrument.

229.   Transferring a Deed of Trust by itself does not allow enforcement of the instrument unless the Promissory Note is properly negotiated.

230.   Where an instrument has been transferred, enforceability is determined based upon possession.

231.   California Commercial Code § 3301 limits a negotiable instrument's enforcement to the following:

> "Person entitled to enforce" an Instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418.  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

232.   None of the Defendants are present holders of the instrument.

233.   None of the Defendants are nonholders in possession of the instrument who has rights of the holder.

234.   None of the Defendants are entitled to enforce the instrument pursuant to section §3309 or subdivision (d) of Section §3418.

235.   Defendants have no enforceable rights under California Commercial Code §3301(a) to enforce the negotiable instrument.

236.   Since there is no right to enforce the negotiable instrument, the Notice of Default provisions of California Civil Code § 2924 and Notice of Sale provisions of California Civil Code § 2924(f) were likewise never complied with, and there is no subsequent incidental right to enforce any deed of trust and conduct a non-judicial foreclosure.

237.   That the Trustee and the loan servicer are acting as agents of the Beneficiary and signing documents as the agent of the agent of the agent of the Beneficiary for Plaintiff Notes and the notices therein, notwithstanding the fact that the Notes were not negotiable prior to the sale of the Subject Property.

238.   That by virtue of the method and manner of Defendants carrying out Civil Code section §2924 et seq., the foreclosure of the Subject Property is void *ab initio* as a matter of law.

239.   Defendants conduct as set forth above was intentional, oppressive fraudulent and malicious so as to justify an award of punitive damages in an amount sufficient that such conduct will not be repeated.

### TWELFTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Against ALL Defendants & and DOES 1 through 50, Inclusive)

240.   Plaintiff refers to, repeats, and realleges each of the allegations in all paragraphs herein above of this Complaint and incorporates said allegations into this cause of action as though fully set forth herein.

241.   In February 2009, Plaintiff was told by Defendant that there was a governmental program aimed at helping homeowners like plaintiff who bought high and whose property values have declined. Plaintiff was told by Defendants that they must miss at least three (3) mortgage payments in order to qualify. Plaintiff was not informed that Defendant would seriously impair his credit as a

result of the missed mortgage payments. Further, Defendants would continue on a "dual track" program which would eventually lead to his loan modification being denied or even not denied but being led to believe it was pending while Defendant at the same time, and behind Plaintiff's back, pursued the foreclosure on his home.

242.   Defendants continued the foreclosure process while at the same time encouraged Plaintiff to apply for a loan modification. Defendants then informed Plaintiff that he was declined in multiple instances all the while Plaintiff did everything possible to save his home. After multiple attempts to negotiate with Defendants and after having to file Bankruptcy to prevent the illegal Trustee sale of his house and the subsequent Unlawful Detainer Action, which is still pending, Plaintiff felt that there was nowhere to protect himself from the illegal and wrongful actions of Defendants, and each of them, except in the Court of Law. The stress was unbearable.

243.   As a proximate result of the acts of Defendants, and each of them, Plaintiff has suffered mental anguish and emotional distress along with chronic sleep deprivation and bouts of deep depression.

244.   The afore mentioned acts of Defendants, and each of them, were willful, malicious and oppressive and justifies the awarding of awarding of exemplary punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Eddie Valencia prays for judgment against Defendants, and each of them, as follows:

1.   For compensatory, special, and general damages in an amount according to proof at trial, but not less than $5,000,000, against all Defendants;

2.   For a judicial finding and decree that the Plaintiff is the legal owner of the property that is commonly known as 10534 Amboy Avenue, Pacoima, California 91331 as recorded in the Office of the County Recorder of the County of Los Angeles, California;

3.   For punitive and exemplary damages in an amount to be determined by the Court against all Defendants;

4.   For an Order compelling Defendants to remove any Instrument which does or could be construed as constituting a cloud upon Plaintiff's title to the Property, including, but not limited to, the Substitution of Trustee, Notice of Default and Election to Seem both Notice of Trustee Sale, the purported Trustee's Deed Upon Sale and the Quitclaim;

5.   For an Order finding that Defendants have no legally cognizable rights as to Plaintiff, the Property, Plaintiff's Promissory Note, Plaintiff's Deed of Trust or any other matter based on contract or any of the documents prepared by Defendants, tendered to and executed by Plaintiff;

6.  For permanent injunction against Defendants, their subsidiaries, affiliates, successors, agents, servants, officers, directors, employees, and all persons acting in concert with them, directly or indirectly, from engaging in the improper, unlawful, unfair, fraudulent, and/or deceptive conduct as described above and according to proof;

7.  For an immediate stay on all proceedings pending in State Court until the conclusion of this instant matter;

8.  For prejudgment interest as allowed by law;

9.  For an order of Forfeiture of return of any loan proceeds;

10. For a judicial decree and finding that Defendants' fraudulent conduct was wanton, willful, malicious, oppressive and unconscionable;

11. For a judicial order and decree establishing and affirming Plaintiff's lawful title in and to the Property, invalidating all unlawful claims against said title, including the Recorded Deed of Trust, Substitution of Trustee, Notice of Default and Election to Sell, both Notice of Trustee's Sale, Trustee's Deed Upon Sale and Quitclaim, according to proof, and thereby quieting title therein in such manner as the court finds to comport to law, equity, and proof;

12. For a judicial finding, decree, and order pursuant to California Code of

Civil Procedure §§746.010, et seq., quieting Plaintiff's title in and to the subject Property as against any and all claims entered upon the title record thereto from and at all times subsequent to January 2007;

13. For the Court to issue an order restraining Defendants, their agents or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents or employees from doing so during the pendency of this matter;

14. For an order compelling Defendants to disgorge all amounts wrongfully taken by them from Plaintiff and returning the same to Plaintiff's interest thereon at the statutory rate from the date the funds were first received from Plaintiff;

15. For costs of suit incurred herein;

16. For reasonable attorneys' fees incurred; and

17. For such other and further relief as the Court may deem proper.

### JURY DEMAND

Plaintiff Valencia demands trial by jury on all issues so triable.

DATED: June 1, 2013

DRESCHER LAW FIRM

Robert E. Drescher, Esq.
Attorney for Plaintiff

VERIFIED COMPLAINT
PAGE 64

**VERIFICATION**

**STATE OF CALIFORNIA, COUNTY OF** LOS ANGELES

    I have read the foregoing VERIFIED COMPLAINT

and know its contents.

       ☐ **CHECK APPLICABLE PARAGRAPHS**

☒ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am ☐ an Officer ☐ a partner
☐ a           of
a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.
☐ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true. ☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for
a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.
Executed on June 1, 2013       , at NEWHALL           , California.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

EDDIE VALENCIA
      TYPE OR PRINT NAME                                               SIGNATURE

**PROOF OF SERVICE**
1013a (3) CCP Revised 2004

**STATE OF CALIFORNIA, COUNTY OF**
    I am employed in the county of                            , State of California.
I am over the age of 18 and not a party to the within action; my business address is:

    On                                     , I served the foregoing document described as

on                                                         in this action
☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:
☐ by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

☐ **BY MAIL**
    ☐ *I deposited such envelope in the mail at                          , California.
The envelope was mailed with postage thereon fully prepaid.
    ☐ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at
                    California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.
Executed on                    , at                      , California.
☐ **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the offices of the addressee.
Executed on                    , at                      , California.
☐ (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.
☐ (Federal)   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

      TYPE OR PRINT NAME                                               SIGNATURE

                                              *(BY MAIL SIGNATURE MUST BE OF PERSON DEPOSITING ENVELOPE IN MAIL SLOT, BOX, OR BAG)
                                              **(FOR PERSONAL SERVICE SIGNATURE MUST BE THAT OF MESSENGER)

Martin Dean's
ESSENTIAL FORMS™

This page is part of your document - DO NOT DISCARD

## 20090778670



Pages:
0004



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

05/27/09 AT 08:00AM

| FEES: | .18.00 |
|-------|--------|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



L E A D S H E E T



200905270260005

00000589381



002123912

SEQ:
11

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED



T35

Recording requested by:

When recorded mail to:

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711



05/27/2009

*20090778670*

_____

Space above this line for recorders use

TS # CA-09-272607-PJ        Order # 090273183-CA-GTI              Loan # 3013204247

## Substitution of Trustee

WHEREAS, EDDIE VALENCIA, A SINGLE MAN, AND ANALILA VALENCIA, A SINGLE WOMAN, AS JOINT TENANTS was the original Trustor, CALIFORNIA RECONVEYANCE COMPANY, A CALIFORNIA CORP. was the original Trustee, and WASHINGTON MUTUAL BANK, FA was the original Beneficiary under that certain Deed of Trust dated 1/22/2007 and recorded on 2/9/2007 as Instrument No. 20070283560, in book xxx, page xxx of Official Records of LOS ANGELES County, CA; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes QUALITY LOAN SERVICE CORPORATION ,as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Substitution of Trustee - CA
TS # CA-09-272607-PJ
Page 2

Dated: 4/14/2009

JPMorgan Chase Bank, National Association

By: _____

Jodi Sobotta        Attorney in Fact

State of Minnesota
County of Dakota)

On APR 17 '09 Date before me, _____ Mark Bischof _____ a notary public, personally
appeared _____ Jodi Sobotta _____ who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ MN _____
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____        (Seal)

MARK BISCHOF
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2013

*4*

## Affidavit of Mailing
### for Substitution of Trustee By Code

TS No.: CA-09-272607-PJ
Trustor: EDDIE VALENCIA, A SINGLE MAN, AND ANALILA VALENCIA, A SINGLE WOMAN, AS JOINT TENANTS

I, Danny Jurado, declare: That I am an employee of **Quality Loan Service Corp.**, an agent for beneficiary, whose business address is:

> 2141 5th Avenue
> San Diego, CA 92101

I am over the age of eighteen years and in accordance with California Civil Code Section 2934, I caused a copy of the attached Substitution of Trustee to be mailed, in the manner provided in Section 2924(b) of the Civil Code of the State of California, to the trustee of record under the Deed of Trust described in said Substitution and to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed at San Diego, CA on 4/20/2009.

Danny Jurado

NEW CENTURY TITLE (GLENDALE)

Recording Requested By:
WASHINGTON MUTUAL BANK   FA

Return To:
WASHINGTON MUTUAL BANK   FA
2210 ENTERPRISE DR
FLORENCE, SC 29501
DOC OPS M/S FSCE 440

Prepared By:
BREE MCNICHOL

*5364437*

02/09/07

20070283560

[Space Above This Line For Recording Data]

ZCA1
M28

# DEED OF TRUST

3013204247-868

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   JANUARY 22, 2007
together with all Riders to this document
(B) "Borrower" is EDDIE VALENCIA ,A SINGLE MAN, AND ANALILA VALENCIA, A SINGLE WOMAN, AS JOINT TENANTS

Borrower's address is   10534 AMBOY AVENUE, PACOIMA, CA 91331
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is WASHINGTON MUTUAL BANK, FA

Lender is a  FEDERAL SAVINGS BANK
organized and existing under the laws of. THE UNITED STATES OF AMERICA

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005 1/01

⊠  –6(CA) (0207)
Page 1 of 15            Initials
VMP MORTGAGE FORMS - (800)521-7291


EXHIBIT
"B"

Lender's address is 2273 N. GREEN VALLEY PARKWAY, SUITE 14, HENDERSON, NV 89014

Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is CALIFORNIA RECONVEYANCE COMPANY, A CALIFORNIA CORP

(E) "Note" means the promissory note signed by Borrower and dated JANUARY 22, 2007
The Note states that Borrower owes Lender FOUR HUNDRED FIFTEEN THOUSAND AND 00/100                                                                                          Dollars
(U.S. $      415,000.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than FEBRUARY 01, 2037

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

Initials _____

2007 0283560

-6(CA) (0207)                          Page 2 of 15                          Form 3005 1/01

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the  COUNTY                            of  LOS ANGELES                           :

        [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE EXHIBIT A AND IS MADE A PART HEREOF.

Parcel ID Number:  2818-018-012                    which currently has the address of

10534 AMBOY AVENUE                             [Street]

PACOIMA                [City], California  91331    [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

Initials _____

—6(CA) (0207)                       Page 3 of 15                        Form 3005 1/01

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

—6(CA) (0207)                    Page 4 of 15                    Form 3005 1/01

Initials EV AV

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials _____

—6(CA) (0207)          Page 5 of 15                    Form 3005 1/01

7

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

-6(CA) (0207)                    Page 6 of 15         Initials _EV_ _KV_                Form 3005 1/01

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

07 0283560

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Initials _____

-6(CA) (0207)                        Page 8 of 15                        Form 3005 1/01

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

Initials BV W

‹Ⓜ›―6(CA) (0207)  Page 9 of 15  Form 3005 1/01

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

Initials _____

VMP®-6(CA) (0207)                     Page 11 of 15                     Form 3005 1/01

Public Record

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

Initials ___

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

-6(CA) (0207)                          Page 13 of 15                     Form 3005 1/01

Initials _____

*15*

ZCA2

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
                                 -Borrower

EDDIE VALENCIA

_____ (Seal)
                                 -Borrower

ANALILA VALENCIA

_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

—6(CA) (0207)                    Page 14 of 15                    Form 3005 1/01

07
02835560

Order: Non-Order Search  Doc: LA:2007 00283560            Page 15 of 22            Created By: s.mariscal   Printed: 12/13/2010 2:31:39 PM PST

16

State of California
County of   LOS ANGELES                          } ss.

On   January 30th 2010   before me,   Katy S. Beatz   A Notary Public
personally appeared

EDDIE VALENCIA   and

ANALILA VALENCIA

personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.
WITNESS my hand and official seal

(Seal)

KATY S. BEATZ
Commission # 1678889
Notary Public — California
Los Angeles County
My Comm. Expires Jun 30, 2010

07 0283560

—6(CA) (0207)                    Page 15 of 15          Initials   EV N          Form 3005 1/01

Public Record

LGLD

17

LEGAL DESCRIPTION

3013204247-8B8

THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE
EXHIBIT AND IS MADE A PART HEREOF.

Q7 0283560

18

**Exhibit "A"**

Lot 88 of Tract 6690, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 77 Pages 81 of Maps in the Office of the County Recorder of Los Angeles County, State of California

This page is part of your document - DO NOT DISCARD




## 20090539481





**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/15/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 14.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 14.00 |





L E A D S H E E T



200904150160002

00000359004



002061427

SEQ:
24

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED



T35

Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101



04/15/2009

*20090539481*

6902731823

| TS No.: CA-09-272607-PJ | Loan No.: 3013204247 | Space above this line for Recorder's use |
| --- | --- | --- |

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

### IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION. You
may have the legal right to bring your account in good standing by paying all of your past due payments
plus permitted costs and expenses within the time permitted by law for reinstatement of your account
(normally five business days prior to the date set for the sale of your property). No sale may be set until
three months from the date this notice of default is recorded (which date of recordation appears on this
notice). This amount is $9,207.15 as of 4/14/2009 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and
taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the
loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in
the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to
reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a
condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property
taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the
entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even
though full payment was demanded, but you must pay all amounts in default at the time payment is made.
However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice
of sale is posted (which may not be earlier than the three-month period stated above) to, among other
things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or
(2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the
obligation being foreclosed upon or a separate written agreement between you and your creditor permits a
longer period, you have only the legal right to stop the sale of your property by paying the entire amount
demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your
property is in foreclosure for any other reason, contact:

**Washington Mutual Bank, FA
C/O Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711**

24

TS No.: CA-09-272607-PJ
Loan No.: 3013204247
**Notice of Default and Election To Sell Under Deed of Trust**

     If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

     NOTICE IS HEREBY GIVEN:  That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 1/22/2007, executed by EDDIE VALENCIA, A SINGLE MAN, AND ANALILA VALENCIA, A SINGLE WOMAN, AS JOINT TENANTS, as Trustor, to secure certain obligations in favor of WASHINGTON MUTUAL BANK, FA, as beneficiary, recorded 2/9/2007, as Instrument No. 20070283560, in Book xxx, Page xxx of Official Records in the Office of the Recorder of  LOS ANGELES County, California describing land therein:  **as more fully described in said Deed of Trust.**

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $415,000.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of principal and interest plus impounds and advances which became due on 1/1/2009 plus amounts that are due or may become due for the following: late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement.

     That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

     The Beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2923.5.

Dated: 4/14/2009

          **Quality Loan Service Corp., AS AGENT FOR BENEFICIARY**
          BY: LSI Title Company

          Anselmo Pagkaliwangan

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

This page is part of your document - DO NOT DISCARD

## 20101193735



Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

08/26/10 AT 08:00AM

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



LEADSHEET



201008260220010

00002867303



002853746

SEQ:
13

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED



EXHIBIT
"D"

Recording requested by
Quality Loan Service Corp

When recorded mail to.
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101



TS # CA-09-272607-PJ          Order # 090273183-CA-GTI          SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 1/22/2007.  UNLESS YOU TAKE ACTION TO PROTECT
YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF
THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal
credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in
Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be
made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances,  to pay the remaining
principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances,
under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the
initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.

Trustor(s):       **EDDIE VALENCIA, A SINGLE MAN, AND ANALILA VALENCIA, A SINGLE WOMAN, AS JOINT
                  TENANTS**
Recorded:         2/9/2007 as Instrument No. 20070283560 in book xxx, page xxx of Official Records in the office of the Recorder of
                  LOS ANGELES County, California;

Date of Sale:     9/16/2010 at 10:30 AM
Place of Sale:    At the West side of the Los Angeles County Courthouse, directly facing Norwalk Blvd., 12720 Norwalk Blvd.,
                  Norwalk, CA 90650
Amount of unpaid balance and other charges: $461,707.34
The purported property address is:        10534  AMBOY AVE
                                          PACOIMA, CA 91331
Assessors Parcel No. 2618-016-012

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein  If
no street address or other common designation is shown, please refer to the referenced legal description for property location.  In the event no
common address or common designation of the property is provided herein directions to the location of the property may  be obtained within 10 days
of the date of first publication of this Notice of Sale by sending a written request to JPMorgan Chase Bank, N.A, 7301 Baymeadows Way
Jacksonville FL 32256.

Pursuant to California Civil Code §2923.54 the undersigned, on behalf of the beneficiary, loan servicer or authorized agent,  declares as follows.

[ 1 ] The mortgage loan servicer has not obtained from the commissioner a final or temporary order of exemption pursuant to
Section 2923.53 that is current and valid on the date the notice of sale is filed;

[ 2 ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does apply to this notice of sale.

13

3

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.

Date: 8/20/2010                    Quality Loan Service Corp.
                                   2141 5th Avenue
                                   San Diego, CA 92101
                                   619-645-7711 For NON SALE information only
                                   Sale Line: 714-730-2727 or Login to: www.fidelityasap.com
                                   Reinstatement Line: 619-645-7711

                                   Quality Loan Service Corp. by: Ronald Alonzo, as Authorized Agent.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

This page is part of your document • DO NOT DISCARD



## 20111745307

Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

12/23/11 AT 08:00AM

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



L E A D S H E E T



201112230190002

00005137259

003700969

SEQ:
10

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

135


"EXHIBIT
E"

2

Recording requested by
Quality Loan Service Corp

When recorded mail to
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101



12/23/2011
20111745307

TS # CA-09-272607-PJ
Order #: 090273183-CA-GTI

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 1/22/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

| | |
|---|---|
| Trustor(s): | EDDIE VALENCIA, A SINGLE MAN, AND ANALILA VALENCIA, A SINGLE WOMAN, AS JOINT TENANTS |
| Recorded: | 2/9/2007 as Instrument No. 20070283560 in book xxx, page xxx of Official Records in the office of the Recorder of LOS ANGELES County, California; |
| Date of Sale: | 1/20/2012 at 11:00 AM |
| Place of Sale: | By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766 |

Amount of unpaid balance and other charges: $496,979.81
The purported property address is: 10534 AMBOY AVE
PACOIMA, CA 91331
Assessor's Parcel No. 2618-016-012

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

10

*3*

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.

Date:

12-22-11

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711 For NON SALE information only
Sale Line: 714-730-2727 or Login to: www.lpsasap.com
Reinstatement Line: 619-645-7711 Ext. 3704

Quality Loan Service Corp. by: Christine Bitanga, as Authorized Agent.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

EDDIE VALENCIA

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

FEDERAL NATIONAL MORTGAGE ASSOCIATION ORPORATION, a federally chartered private corporation; QUALITY LOAN SERVICE CORPORATION, a California Corporation; LSI TUTLE COMPANY, a Florida Corporation; JP MORGAN CHASE BANK, N.A. A New York Corporation, DOES 1 to 10, Inclusive

**(b) Attorneys** (Firm Name, Address and Telephone Number.  If you are representing yourself, provide same.)

DRESCHER LAW FIRM
ROBERT E. DRESCHER, ESQ.  SBN # 190886
24303 WALNUT STREET, SUITE F
NEWHALL, CALIFORNIA 91321  (661) 260-1149

**(b) Attorneys** (Firm Name, Address and Telephone Number.  If you are representing yourself, provide same.)

UNKNOWN

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ MONEY DEMANDED IN COMPLAINT: $ $5,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. §2201, 2202, 12 U.S.C. §2605, 15 U.S.C. §1692

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☒ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY:  Case Number: **CV13-04307**

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?    ☒ NO    ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?    ☒ NO    ( YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    ☒ A. Arise from the same or closely related transactions, happenings, or events; or

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| EDDIE VALECIA - LOS ANGELES COUNTY, CALIFORNIA | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | JP MORGAN CHASE BANK, N.A. - NEW YORK COUNTY, NEW YORK<br>FEDERAL HOME LOAN FREDDIE MAC ASSOCAITION CORPORATION - FAIRFAX COUNTY, VIRGINIA |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | QUALITY LOAN SERVICE CORPORATION - SAN DIEGO COUNTY, CALIFORNIA<br>LSI TITLE COMPANY - DUVAL COUNTY, FLORIDA |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: in land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____ DATE: 6/13/2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |